Plaintiff, alleging ownership and possession of the NW 1/4 of SW 1/4 of Section 30, Township 17 North, Range 11 West, in Bossier Parish, Louisiana, claimed that defendant, Miss Sybil McDade, had slandered his title by claiming to be the owner of the property described under an adjudication made pursuant to a commission to sell issued in the suit of Mrs. Eva McDade Robertson et al. v. Mrs. Edna McDade Clement et al., No. 13,188 on the docket of the Twenty-sixth Judicial District Court in and for Bossier Parish. For the restricted purpose of showing his possession and the character thereof, plaintiff averred that he acquired title to the property in question by patent from the government of the United States issued on date of June 11, 1900. Plaintiff claims to have been in actual, corporeal, open and notorious possession of the land, and to have exercised the rights of ownership thereupon from date of issuance of the patent to date of filing of this suit, and further shows that he had never suffered disturbance of said possession until a notice to vacate was served on him by the Sheriff in the proceedings as above numbered and entitled, to which proceedings he was not a party, and of which he had no knowledge. Plaintiff prayed that defendant be ordered to disclaim any interest or to assert such title as she might have, and for judgment in his favor decreeing him to be the true and lawful owner, and for general relief.
In answer to plaintiff's suit the defendant was joined by Mrs. Martha McDade Smith and Mrs. Eva McDade Robertson. The action was converted into a petitory action by the answer of the three defendants, each of whom claimed ownership of an undivided one-third interest in the property. The defendants admitted plaintiff's possession of the property, but denied his possession as owner.
In connection with this opinion, reference is made to the parties, plaintiff and defendant, as they were designated in their original action.
The record is largely made up of documentary evidence, and the only testimony was given by the plaintiff, Green, and by George Nelson, Deputy Tax Collector, who testified as a witness on behalf of defendants.
In support of their claim of title, defendants introduced and filed in evidence an authentic act of sale dated April 2, 1920, conveying the property in question to Joe S. McDade, which act was executed by plaintiff, Charles Green, and recited a cash consideration of $238.60. The deed is shown to have been recorded in Volume 55 at page 332, of the Records of Bossier Parish, Louisiana. Joe S. McDade died in 1937, and his heirs were recognized and placed in possession of his property, including the tract involved in this suit, by judgment dated May 14, 1937, recorded in Volume 132, Page 62, of the Records of Bossier Parish. Under the adjudication in the partition suit above referred to, the property was acquired by the defendant, Sybil McDade, and by subsequent conveyances an undivided one-third interest therein was acquired by Mrs. Martha McDade Smith, and a like interest by Mrs. Eva McDade Robertson. The above instruments were introduced and filed in evidence on behalf of defendants.
On the part of plaintiff, in addition to copy of patent, to which reference was made above, the record contains the notice to vacate and a writ of ejectment issued in suit No. 13,188 as above entitled. Plaintiff also introduced and filed in evidence a copy of oil, gas and mineral lease from J.S. McDade to A.C. Skannal, Jr., covering the forty-acre tract described, which instrument is dated December 20, 1933, and recites a consideration of $200 cash. *Page 639 
The transcript of evidence contains two stipulations, the first being an agreement that A.C. Skannal, Jr., lessee in the above and foregoing instrument of lease, if present on trial of the case, would testify that he purchased the lease for the United Gas Company and paid to J.S. McDade "royalties in the oil, gas and mineral lease as the apparent record owner thereof since the year 1920".
The second admission stipulates that Dr. C.M. Tucker, if present as a witness on trial of the case, would testify "that he acted as notary in the execution of that certain deed from Charles Green to J.S. McDade dated April 2, 1920, recorded in the conveyance records of Bossier Parish, Vol. 55 page 332 was understood by him to be a deed conveying the property therein recited for the consideration, price and sum expressed in said deed".
Plaintiff is an illiterate negro, unable to read or write, now more than 90 years of age, and there is no question about the fact that he has lived upon the property involved in this suit since the date of the patent, June 11, 1900, and has exercised every right of ownership thereupon without interference or disturbance until the service of the notice to vacate. For forty years he had lived upon and farmed a portion of the eighty-acre tract included under the patent, built and maintained thereon his home, barn and fences; planted an orchard, etc. Upon defendant's offering of the purported deed from plaintiff to Joe S. McDade, counsel for plaintiff objected to the admission thereof in evidence on the ground that the instrument was null, void and of no effect. The charge of nullity was predicated upon specific objections, that the deed in question was obtained from the plaintiff by fraud and error; that the old negro being ignorant, without the ability either to read or write, did not know that he was executing a deed by affixing his mark, and did not so intend, but rather intended to give a mortgage on that portion of his land described in the deed. Counsel's objections further specified that at the time of execution of the deed plaintiff did not intend to part with his ownership of the property, but understood that he was giving a mortgage thereon; further, that no consideration was paid, and that the recited consideration of $238.60 was not paid, and, as a matter of fact, represented only the price of supplies and advances made and to be made during the crop year of 1920; that plaintiff had remained in the actual possession of the land since the execution of the deed, and, therefore, the purported sale was a simulation, and, finally, that the recited consideration represented less than half the value of the land.
The trial Judge referred the objections to the effect of the document and admitted the same, subject to the objections.
There can be no question as to the fact that the effect of the objections was to lay the foundation for attacking the deed on the ground of fraud and error. Plaintiff, having brought suit in the nature of slander of title, and the action having been converted by defendant's answer into a petitory action, no replication being permitted under our laws, it was only by means of the objection that the real issue could be raised. In our opinion, any question raised by this procedure is resolved in favor of plaintiff's right to subject the instrument to attack under the doctrine announced by the Supreme Court in Abshire v. Lege, 133 La. 254, 260, 62 So. 667.
By means of the objection plaintiff set up his contention of fraud and error as fully and as completely as if such claim had been set forth in his pleadings, and it therefore follows that parol testimony was accordingly admissible for the purpose of attempting to show the deed in question had been obtained through fraud and error.
The uncontradicted testimony of the plaintiff is to the effect that he never executed but one instrument in favor of Joe S. McDade; that said instrument was executed before Dr. C.M. Tucker at his office at Haughton, Louisiana. Plaintiff further testified that during the period of some 17 years which elapsed between the date of the deed and the date of Mr. McDade's death, he paid the amount of the taxes on the property to Mr. McDade every year; that after Mr. McDade's death he did not pay the taxes because Mr. McDade's sister said it was her place and he did not get any tax notice; that he never paid any rent on the property; that his home burned down on one occasion and he rebuilt it; that the only business he ever had with Mr. J.S. McDade was to borrow $100 from him, as security for which he went before the notary at Haughton at the time he got the money and signed the mortgage, which was to be paid back when the place was leased; that after the property *Page 640 
was leased he went to Mr. Skannal, who informed him that he had paid $200 for the lease, and that, thereupon, he went to Mr. McDade for the purpose of effecting a settlement, but Mr. McDade would not settle.
Not one word of the testimony of plaintiff was contradicted on the part of defendant. It is to be noted that the stipulation with regard to the testimony of Dr. Tucker does not admit that Dr. Tucker, the notary, would have testified that the old negro understood the instrument to be a deed, but only that he, Tucker, understood it to be a deed. Nor was there any attempt to include in the stipulation any fact that would indicate that the instrument had been read or explained to the illiterate old darky, who affixed his mark thereto.
The only testimony on behalf of defendant was given by Mr. Nelson, the Deputy Tax Collector of Bossier Parish, who testified merely that the property was assessed to Mr. McDade, and that the taxes had been paid by Mr. McDade ever since June, 1932, and, further, that the property had not been assessed to nor had taxes been paid by Charles Green. However, the witness admitted that assessments were made to the last vendee as shown on the records of the clerk's office. We do not feel that this testimony has any bearing or weight upon the matters involved in this case, since there is nothing therein which even by inference would impeach or contradict the old negro's testimony that he paid the tax money to Mr. McDade, who actually paid the taxes.
Upon the facts as disclosed by the record, we are convinced that plaintiff had no intention of making conveyance of the property, and that he was under the distinct and definite impression that the instrument he executed was a mortgage. To our minds, no other conclusion could be reconciled with the facts adduced upon trial of the case. It is inconceivable that a purchaser of a forty-acre tract of land of a value of some $20 per acre, with modest but nonetheless satisfactory improvements thereon, would suffer seventeen years to pass without making the slightest attempt to take possession, or in any way to assert his rights of ownership. Over this period of time the purported vendee suffered his vendor to remain in absolute, open and uncontested possession, to exercise every right of ownership, all without payment of a single solitary cent in the nature of rent.
It is a well recognized rule of law that error with regard to the nature of a transaction, "error in negotio", renders the transaction void:
"Error as to the nature of the contract will render it void.
"The nature of the contract is that which characterizes the obligation which it creates. Thus, if the party receives property, and from error or ambiguity in the words accompanying the delivery, believes that he has purchased, while he who delivers intends only to pledge, there is no contract." Civil Code, Article 1841.
The exact situation exists in the case before us as is set forth in the codal article, for while he who received may have intended to purchase, it is evident that he who delivered intended only to pledge.
The learned Judge of the district Court, in his written opinion upon trial of this case, clearly indicated that he believed the original intention to be a sale with right of redemption, but that the long silence of the plaintiff barred his right to recover. In our opinion, our learned brother did not carry his belief to the ultimate and proper conclusion, for, if he had given full weight to the facts and circumstances surrounding this matter, we feel the conclusion would have been inescapable, that the obligation for action, if any, lay rather upon the purported purchaser than upon the plaintiff who continued in possession and exercised every right and privilege of ownership. Because appellate courts are notoriously loath to reverse judgments upon issues of fact, we have meticulously sought in this opinion to set forth in minute detail the reasons which have influenced our conclusions, and with full regard for the findings of the Court below, we, nevertheless, feel assured that the facts themselves more than indicate the necessity for a reversal of the judgment rendered.
It is true, as the trial Judge stated in his opinion, that defendants admit plaintiff's possession of the property, but deny that he possessed as owner; alleged that they and their ancestors in title paid the taxes on the property; and that the plaintiff rented from their ancestor in title and listed the property with the U.S. Department of Agriculture under the representation that he was the tenant.
The above are indeed pertinent allegations, and would, if established, change the entire structure upon which our opinion *Page 641 
is based, but they have not been established, even in the slightest degree, with the possible exception of the allegation with reference to the payment of taxes. Granting that defendant's ancestor in title performed the physical act of making payment of the taxes to the tax collector, there still has been no refutation of plaintiff's claim that the money used for such payments was delivered by him to defendant's ancestor in title. There is nothing in the record that indicates that defendants themselves have paid any taxes. As to the allegations that plaintiff represented himself in his transactions with the U.S. Department of Agriculture to be a tenant of the property, the only reference to this matter was made in cross-examination of plaintiff, and he repeatedly and emphatically denied such fact.
It is contended on behalf of defendants that they are third parties, relying upon the faith of the public records, and are not chargeable with notice of secret equities existing between the original parties to the instrument. Defendants, Sybil McDade and Eva McDade Robertson, were heirs of Joe S. McDade, and defendant, Martha McDade Smith, was an heir of Dr. Wilkins McDade, who was also one of the heirs of Joe S. McDade. Recitals in the deed of conveyance from Sybil McDade to Martha McDade Smith and Wilkins McDade, Jr., disclose the fact that vendor had received the purchase price for an undivided one-third interest in the property from Dr. Wilkins McDade, Sr. Since Dr. McDade died subsequent to the payment of the purchase price, but before deed had been passed, the formal conveyance of the interest was made to his heirs, Martha McDade Smith and Wilkins McDade, Jr. Subsequently, Wilkins McDade conveyed his interest to his sister, Martha McDade Smith. We are of the opinion that heirs succeed to the rights and liabilities of him from whom they inherit, and, therefore, are chargeable with the effect of error on his part. Consequently, the defendants in this case cannot be considered as bona fide third parties.
For the reasons assigned, we are convinced of the truth of the anguished cry of plaintiff in his concluding words under cross-examination:
"I ain't never sold it, I ain't never sold it."
Accordingly, the judgment appealed from is annulled and reversed, and there is judgment in favor of plaintiff, Charles Green, and against the defendants, Sybil McDade, Mrs. Martha McDade Smith, and Mrs. Eva McDade Robertson, recognizing plaintiff, Charles Green, to be the true and lawful owner of the property described as the Northwest Quarter of Southwest Quarter (NW 1/4 of SW 1/4) of Section Thirty (30), Township Seventeen (17) North, Range Eleven (11) West, Bossier Parish, Louisiana.
And there is further judgment ordering defendants to cease disturbing plaintiff in his possession of the property described.
There is further judgment against appellants for all costs of this suit.